[No. 1,655.]

# W. H. PATTERSON v. GEORGE DONNER ET AL.

48   369
91   522
48   369
105   207
48   369
149   676

CONTEMPORANEOUS PAPERS.—When, at the time of the execution of a deed, the grantee executes and delivers to the grantor a writing, in the nature of a defeasance, the two must be read as one instrument, both as between the parties, and as between the grantor and an assignee of the grantee, with notice of the defeasance.

PURCHASER IN GOOD FAITH.—If the grantee executes and delivers to the grantor a defeasance, one who buys from the grantee in good faith, and for a valuable consideration, by virtue of the Registration Act, takes a good title.

WHEN NOT ENTITLED TO EQUITABLE RELIEF.—No person can complain in equity of the fraudulent practices of another, unless he has been injured by such practices.

DEFEASANCE.—If, at the time of the execution of a deed, the grantee executes and delivers to the grantor a writing, stating that he has received the deed as security for money to be paid to him in consideration of his thereafter procuring witnesses to testify to a certain state of facts, it is not a defeasance, and the transaction does not constitute a mortgage.

AGREEMENT AGAINST PUBLIC POLICY.—An agreement to procure witnesses to testify to a certain state of facts, is immoral, and against public policy.

DEED WITH UNLAWFUL CONDITION SUBSEQUENT.—If the grantee, at the time the deed is given, executes to the grantor a writing, stating that if the grantee shall not procure two witnesses to testify to a certain state of facts, the "deed shall be null and void," and that if the grantee shall procure such witnesses, then the deed shall take effect as a mortgage, the transaction constitutes a conveyance of the legal title with an unlawful condition subsequent.

IDEM.—One who places legal title to land in another, upon an unlawful condition subsequent, cannot recover it by suit at law, or in equity.

ENFORCMENT OF MORTGAGE.—The person who conveys land upon an unlawful condition subsequent, and then purchases it back, and executes a mortgage for the purchase-money, cannot resist the enforcement of the mortgage on the ground that the condition subsequent was against public policy, or that there was a want of consideration.

COUNSEL FEES FOR FORECLOSING MORTGAGE.—A stipulation in a mortgage, allowing counsel fees for a foreclosure, does not entitle the plaintiff to counsel fees unless he pays them, or at least has become liable for them. The plaintiff cannot, under such stipulation, recover counsel fees for foreclosing his own mortgage.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Action to enforce a mortgage given by the defendant Donner to the plaintiff, on the 15th day of March, 1862,

on an undivided five sixths of the fifty-vara lot No. 39, at the corner of Folsom and Second streets, San Francisco. Donner claimed the lot by a grant made to him by Hyde, Alcalde of San Francisco, on the 19th day of July, 1847, and had commenced an action against several persons who were in possession of it to recover possession. It became important to him to prove the existence of the grant. John Yontz had acquired some interest in the lot from Donner, and he and Donner, on the 12th day of October, 1858, executed to P. C. Lander, an absolute deed of the lot. Lander, at the same time, executed and delivered back the following instrument in writing:

"This is to certify that I have received this day from George Donner and John Yontz, a deed for the one undivided one fourth part of one hundred (100) vara lot, number thirty-nine (39) situated in the city and county of San Francisco, State of California, as security for the payment of the sum of twenty-five hundred dollars to be paid out of the first moneys received from the sale of said lot, or out of the first moneys realized by suit, compromise, or otherwise, with parties in possession of said lot, or by sale to other parties; provided, that I do procure two witnesses to testify that they have seen what purported to be a genuine grant of said one hundred (100) vara lot to George Donner, signed by George Hyde, first Alcalde; and, in case I do not procure said witnesses, who will prove said fact, then the aforesaid deed to be null and void. And when said sum of twenty-five hundred dollars shall be paid, then the said one undivided fourth part of said lot is to be reconveyed by me to said George Donner and John Yontz, or to such party or parties as they may designate.

"In witness whereof, I have hereunto set my hand and seal, this 12th day of October, A. D. 1858.

"P. C. LANDER. [SEAL.]"

This instrument was not acknowledged or recorded. The deed was made to Lander because one Swasey was indebted to Lander in the sum of two thousand five hundred dollars, and to secure to Lander Swasey's debt. Lander

remarked at the time that he could not procure the witnesses, but Donner replied that Swasey could. On the 28th of July, 1860, Lander deeded the property to James Ross. Ross became the grantee at the request of the plaintiff, and as the trustee of the plaintiff and Jesse D. Carr, who furnished the money to pay Lander Swasey's indebtedness to him. Ross was an alien, and became the grantee for the purpose of enabling the parties to bring any suit necessary to recover the lot in the Federal Courts. The plaintiff and Carr had agreed to share equally in the property. When Lander deeded to Ross, only six hundred dollars was paid down, but, a few days subsequent, upon the payment of the other one thousand nine hundred dollars, Lander informed Carr of the writing he had given back to Donner and Yontz. Sometime afterwards, S. O. Houghton informed the plaintiff of the writing given by Lander to Donner and Yontz, which was the first information the plaintiff had of its existence. He then proposed to convey to Donner if he (Donner) would give back the mortgage, to enforce which this action was brought. He informed Donner that he did not know of the existence of the writing given by Lander when the deed was given to Ross, and Donner thereupon received from Ross a conveyance, and executed the note and mortgage sought to be enforced in this action. Donner defended in this action on the ground that the note was without consideration, and that the plaintiff fraudulently represented to him that he had no notice of the writing given by Lander. Donner claimed, first, that the transaction between himself and Yontz and Lander constituted a mortgage, and that the plaintiff bought of Lander with full notice, and that the condition in the so-called defeasance was void, as against public policy. The Court below enforced the mortgage and allowed the plaintiff a counsel fee of five hundred dollars. The mortgage, after providing for a sale of the property under a decree of Court, proceeded as follows: "And out of the money arising from such sale, to retain the principal and interest which shall then be due on the said note, together with the costs and charges for advertisement and

sale of the said premises, and of suit for foreclosure, includ-
ing counsel fees not to exceed five per cent." .

The complaint was signed by *Patterson, Wallace & Stow,*
as attorneys for the plaintiff. The plaintiff was an attorney
and the other two gentlemen were his partners.

The defendant Donner appealed.

The other facts are stated in the opinion.

*J. R. Sharpstein,* for the Appellant.

The deed from Donner and Yontz to Lander was abso-
lutely void, and his conveyance to Ross in trust was equally
so.

The former deed was by agreement of the parties to be
null and void, unless Lander procured two witnesses to
testify that they had " seen what purported to be a genuine
grant of said one hundred (100) vara lot to George Donner,
signed by George Hyde, first Alcalde."

That constituted the sole consideration of the deed. It
is an illegal consideration, and void as against public pol-
icy. (*Valentine* v. *Stewart,* 15 Cal. 387, 404–405; *Stanley* v.
*Jones,* 7 Bing. 369, 376–379.)

The consideration that Lander should furnish two wit-
nesses to testify to a material fact in an issue then pending
in a Court of justice, is an illegal consideration; and if so,
the whole instrument is void. The rule is, that : "If any
part of the consideration be *malum in se,* or the good and
void consideration be so mixed, or the contract so entire,
that there can be no apportionment, the whole instrument
is void." (2 Kent, * 468; 1 Parsons on Contracts, * 379,
380; *Burt* v. *Place,* 6 Cow. 431; *Scott* v. *Gilmore,* 3 Taunt.
226; Lord Kenyon in *Moreys* v. *Leake,* 8 Term, R. 411;
*Hinde* v. *Chamberlin,* 6 N. H. 225; *Frazier* v. *Thompson,* 3
Watts and Serg. 285; *Leavett* v. *Palmer,* 3 N. Y. 19, 36,
37; *Taaffe* v. *Josephson,* 7 Cal. 352; *McKenty* v. *Gladwin,*
10 Id. 227; *Valentine* v. *Stewart,* 15 Id. 387, 404.)

It is only in cases of notice after the delivery of the deed
that a party is protected to the extent of his payments in
good faith. If notice be received before the delivery of
the deed, he can claim nothing on the ground of having

paid a part, or even the whole of the purchase-money, before notice. (*Boone* v. *Chiles*, 10 Pet. 177, 210, 211; *Merritt* v. *Lambert*, Hoffm. 166; 1 Paige, 280; 5 Little, 62; 1 Mumf. 38; 6 Leigh, 365.)

The deed of Donner and Yontz to Lander, and the defeasance back, constituted a mortgage which did not vest in Lander any estate in the land, either before or after condition broken; and an absolute conveyance of the premises by him amounted to an assignment of the mortgage, the grantee being substituted to the rights of the mortgagee.

"In equity," says Chancellor KENT (4 Com. 142,) "the character of the conveyance is determined by the clear and certain intention of the parties; and any agreement in the deed, or in a separate instrument, showing that the parties intended that the conveyance should operate as a security for the repayment of money will make it a mortgage.

The instrument of defeasance executed by Lander to Donner and Yontz, shows that the deed had been received by the former as security for the sum of "twenty-five hundred dollars, to be paid to Lander if he should procure two witnesses to testify to a fact specified in the defeasance.

The *condition is precedent*, as the mortgage was *not to* take effect until the condition was performed, and the condition being unlawful, the mortgage was void.

The condition that Lander should procure the two witnesses was the sole consideration of the mortgage, but this being illegal, it would be void even if there were other considerations which were legal; and that whether the illegality be at common law or by statute, as the distinction between contracts to do acts which are *mala prohibita* and *mala in se*, is no longer recognized. (Chitty on Contracts, 9th ed. 613; 1 Story on Contracts, 4th ed. Sec. 488.)

*Patterson, Wallace & Stow*, for the Respondent.

Our proposition is that, even as against Lander, Donner could not maintain a right to be relieved touching the conveyance made to him.

The appellant's counsel asserts that "the deed from

Donner and Yontz to Lander, was absolutely void;" be-
cause, as he claims, its consideration "is an illegal con-
sideration, and void as against public policy."

We agree with him that "the consideration is an illegal
consideration, and void as against public policy;" but we
differ widely with him as to the result which flows from the
proposition of law thus admitted between us.   The execu-
tion and delivery of the deed from Donner to Lander, be-
yond doubt, placed the legal title in Lander.

Now, it would have required the aid of a Court of Equity,
to enable Donner to obtain that legal title from Lander and
re-vest it in himself.  Would Donner be heard in that Court
to allege his own turpitude as a ground of relief?  Would
the Court favor him because his hands were unclean?  We
have greatly misunderstood the law in this respect, if it
would do so.

The defeasance is void—the deed good; the former is an
executed, the latter only an executory contract.   (*Moseley*
v. *Moseley*, 15 N. Y. R, 334; *Nellis* v. *Clark*, 4 Hill. R. 426.)

There is a marked and settled distinction between ex-
ecutory and executed contracts of a fraudulent or illegal
character.  Whatever the parties to an action have executed
for frauduent or illegal purposes, the law refuses to lend
its aid to enable either party to disturb.   Whatever the
parties have fraudulently or illegally contracted to execute,
the law refuses to compel the contractor to execute or pay
damages for not executing ; but, in both cases, leaves the
parties where it found them.  The object of the law in the lat-
ter case is, as far as possible, to prevent the contemplated
wrong, and in the former, to punish the wrong done by
leaving him to the consequences of his own folly or miscon-
duct.   (*Smith* v. *Hubbs*, 1 Fairf. 10 Maine R. 76.)

In *Doe* dem. *Roberts* v. *Roberts* (2 Barnw. & Ald. 367), an
action of ejectment was maintained in the Court of King's
Bench, upon a deed of conveyance, the consideration of
which was void as being a fraud upon the law—"an indict-
able conspiracy."   To the same effect are the following au-
thorities: *Norris* v. *Norris*, 9 Dana. R. 318; *Westfall* v.
*Jones*, 23 Barb. R. 11.

*Wm. Irvine,* also for Respondent.

If the condition of the defeasance is obnoxious to the objection *ex. turpi contractu,* it is only because of the rule which grew out of the law against champerty and maintainance; and since the statutes of Henry VIII., in England and here the authorities are uniform to the effect that the feoffor is estopped by his deed.

KENT, C. J., in *Jackson* v. *Dermont,* 9 John. Rep. 55–59, says: "We mean not, however, to discuss and decide this point in the present case, for even admitting the sale to be an act of maintainance, yet the deed was effectual as between the parties to it. Rufus Lathrop cannot recover in opposition to his deed to Miller. It operates to estop him; and it seems to be a principle which runs through the books, that a feoffment upon maintainance or champerty is good, as between the feoffor and the feoffee, and is only void against him who hath the right (the party claiming adversely and in possession)."

The Court (per BRONSON, J., in *Van Hoesen* v. *Benham,* 15 Wend. R. 164, 165,) lays down the same rule and cites *Jackson ex. dem.* v. *Dermont,* and the case of *Livingston* v. *The Peru Iron Co.,* (9 Wend. 516,) and the same principle is reiterated in *Pepper* v. *Haight,* (20 Barb. R., 439,) and the case of *Livingston* v. *Prosens,* (2 Hill, 526, 528,) is also cited to the effect that "it is said to be well settled that as between grantor and grantee, and persons standing in legal privity with them, the deed is operative and passes the title." ALLEN, J., delivering the opinion in *Pepper* v. *Haight,* says "that it is a principle running through the books that a feoffment upon maintenance or champerty is good as between feoffors and feoffees, and is only void against him who hath the right."

*John Reynolds,* also for Appellant in reply.

The character of the instrument now under consideration, cannot be affected by the fact that Lander did not loan or advance any money to Donner and Yontz.

The assertion in *Chapman* v. *Turner,* (1 Cal. 252,) re-

ferred to in 1 Hilliard on Mortgages, page 1, that " a mort-
gage is always founded on a loan," is declared by that
author to be wholly fanciful.

In *Hickox* v. *Love, supra,* it is held not to be necessary
that there should be a subsisting obligation to pay on the
part of the mortgagor or any one else. I understand that
every conveyance made to secure the payment of money,
or the performance of any other obligation, and having no
other purpose than such security, is a mortgage; and that
" whatever its terms," it shall not be deemed a convey-
ance, so as to enable the owner of the mortgage to recover
the possession without a foreclosure and sale. (1 Hilliard
on Mortgages, p. 1 *et seq.;* Practice Act, Sec. 260.)

*Sharpstein,* also in reply.

Respondent admits that the consideration of the mort-
gage from Donner and Yontz to Lander, was illegal and
void as against public policy. He insists, however, that
the instrument which we call a mortgage, was a deed in
fact. We, on the other hand, insist that it was a mortgage
in fact, and never could be treated as a deed by any person
who had notice of the defeasance.

He says: "The defeasance is void; the deed is good;
the former is an executed, the latter only an executory con-
tract." The vice of this argument is, that it assumes that
the two instruments are separate and distinct deeds. A
mortgage may be made by an absolute deed and a defeas-
ance back to the grantor, instead of a single conditional
deed. (1 Hilliard on Mortgages, 27.) These two instru-
ments must therefore be considered as parts of the same
contract, in the same manner as a deed of defeasance forms
with the deed to be defeated but one contract, though en-
grossed on several sheets. (Per PARSONS, C. J. in *Hol-
brook* v. *Finney,* 4 Mass. 569.) The condition upon which
the land is conveyed is usually inserted in the deed of con-
veyance, but the defeasance may be contained in a separate
instrument.     *     *     *     *     The essence of the
defeasance is that it defeats the principal deed and makes
it void if the condition be performed. (4 Kent's Comm.

141.) Deeds which are parts of the same transaction constitute but one instrument. The mortgage in this instance, (for such it undoubtedly is,) consisted of an absolute conveyance, and a bond with a condition to reconvey on the payment of six thousand dollars by the grantor. (C. J. GIBISON, in *Friedly* v. *Hamilton*, 17 S. & R. 70:)

To say that the mortgagor may or may not record the defeasance, as he pleases, and that if he will not, he thereby agrees that the deed shall be absolute, is to enable a party to make it either a mortgage or absolute deed, at his pleasure; whereas the character of the instruments are indelibly stamped upon them at their original formation, constituting them in law a mortgage with all its incidents; and if it was once a mortgage, it always continues to be so, not liable to be changed in this respect by posterior acts and omissions. (SERGEANT, J., in *Jaques* v. *Weeks*, 7 Watts, 261, 268.)

In respect to the question raised by respondent, the defeasance in this case must be treated precisely as if it had been inserted in the principal deed, according to the more usual practice. (*Patterson* v. *Clark*, 15 Johns. 205; *Erskine* v. *Townsend*, 2 Mass. 497; *Webber* v. *Patterson*, 7 Humph. 431; *Hammond* v. *Hopkins*, 3·Yerg. 525; *Colwell* v. *Woods*, 3 Watts, 188.)

By the Court, McKINSTRY, J.:

The contemporaneous writing executed by Lander, being under seal, should be read with the deed from Donner, and the two must be held to constitute one instrument, both as between the parties to it, and as between Donner and an assignee of Lander, with notice of the alleged defeasance. By virtue of the Registration Act, however, a grantee of Lander in good faith, and for valuable consideration, would take the legal title, unaffected by any condition or limitation contained in the unrecorded writing.

The defendant alleges that he was induced to accept from the plaintiff a conveyance of the premises, and to execute as security for the purchase-price, the mortgage which this action was brought to foreclose, by reason of

false representations on the part of the plaintiff, that he (the plaintiff) had no notice of the writing which the defendant had failed to have recorded.

The Court below found that the representations were in fact made, but that they were true; and further found, that in law the plaintiff must be held to have had knowledge of the unrecorded portion of the instrument, because of his relations to Carr, who had actual notice of it before he paid the entire purchase-money to Lander.

No man can complain in equity of the fraudulent practices of another, unless he has been injured by such practices. It is clear, therefore, that if the right or estate derived by the defendant through the deed from the plaintiff, is unaffected by the circumstance that the latter had or had not notice of the contemporaneous writing, he cannot claim that he has been injured by the misrepresentation of which he complains. In this connection it becomes important to inquire what was the legal effect of the whole instrument executed by Lander and the defendant.

We do not think the writing executed by Lander defeated the conveyance of the fee to him. Taken together, the papers do not constitute a mortgage as of their date. It is true, the writing delivered by Lander recites: "I have received this day, from George Donner and John Yontz, a deed for the undivided one fourth part, etc., as security for the payment of twenty-five hundred dollars," etc. But this is immediately followed by the condition: "Provided, that I do procure two witnesses to testify that they have seen what purported to be a genuine grant of said one hundred-vara lot to George Donner, signed by George Hyde, first Alcalde; and in case I do not procure said witnesses, who will prove said fact, then the aforesaid deed to be null and void." The instrument further provides that when the twenty-five hundred dollars should be paid (which was not payable until after the witnesses had been procured and had testified), then the undivided one fourth part of the lot was to be "reconveyed" to Donner and Yontz, or to such party as they might designate.

There is no recital in the instrument, nor is there any-

thing upon its face, indicating that Lander had loaned or advanced money to Donner or Yontz. On the contrary, it is plain that it was the illegal and immoral service to be performed which was rated by the parties as of the value of twenty-five hundred dollars, and that the title was to stand as security for that sum only after the unlawful act had been accomplished. Appropriate words of conveyance transferred the legal title to Lander when the deed was executed, and, incorporating the other writing into the deed, there is nothing in the language which constitutes a defeasance. The legal title was conveyed to Lander upon condition subsequent.

The defendant insists, and his defense rests upon the proposition that this condition is immoral, and against public policy. We fully agree that a stipulation that one shall, in consideration of a large sum of money, not only procure witnesses, but procure them to swear to a particular fact, is unlawful. The evidence showed that the illegal service was to be performed by a third person who was indebted to Lander in the sum named; and this removes any imputation of intentional wrong on the part of Lander. But such testimony cannot be considered in construing the instrument, and does not change its legal effect. Assuming the condition subsequent found in the instrument to be against law, the legal estate having once vested in Lander, could not become divested by his failure to perform the illegal stipulation, but became and was absolute. (Co. Lit. 106; 2 Wash. Real Prop. 447; *Weatherby* v. *Weatherby*, 13 S. & M. R. 687; 4 Kent Com. 130.)

The plaintiff, as grantee of Lander, held the legal title to the premises conveyed, discharged of any condition, since the condition was void but the grant good. It follows that his estate was not limited or affected by the fact that he had notice of the unrecorded portion of the instrument under which he held; and that the defendant acquired every right by his deed from the plaintiff, which he would have derived, had the plaintiff been the purchaser in good faith, within the meaning of those terms as defined by the law. Having placed the legal title in Lander and his grantees upon an

unlawful condition subsequent, the defendant could never recover the property by suit in law or equity. He reacquired it by purchase from the plaintiff, and the purchase-price was a sufficient consideration for the mortgage which is the subject of the present action.

The judgment of the Court below should be reduced, however, by the sum of five hundred dollars, fee of counsel for foreclosure. The action was brought and prosecuted by the plaintiff personally. We do not think that the stipulation in the mortgage sued on, for counsel fee, can apply where no counsel fee was paid by the plaintiff.

With this modification the judgment is affirmed, as of January 12, 1874.

RHODES, J., dissenting:

The principal question to be determined in this case is, what is the real nature of the transaction between Donner and Yontz on the one side, and Lander and Swazy on the other? Donner and Yontz wished to procure two witnesses to testify to a certain fact, and it was agreed between all the parties that, if the witnesses should be procured by Swazy, Donner and Yontz would pay therefor the sum of two thousand five hundred dollars, and that the money would be paid to Lander, as Swazy was indebted to him. In order to secure the payment of the money, an instrument, in form a deed of conveyance, was executed to Lander by Donner and Yontz; and thereupon Lander executed to Donner and Yontz the instrument in evidence, which may be called a defeasance. It is therein recited that Lander had received from Donner and Yontz the deed of conveyance as security for the payment of the sum of two thousand five hundred dollars, to be paid as therein mentioned, provided that he (Lander) should procure the two witnesses before mentioned, and that if he should not procure such witnesses, then the deed should be null and void. These two instruments are to be read together, as forming parts of one transaction; and when so read, they clearly constitute a mortgage. The nature of the transaction is not

changed by the fact that Donner and Yontz did not make an absolute promise to pay the money. If "A." agrees with "B." to perform a certain act, and "B." agrees that upon the performance of the act he will pay "A." a certain sum of money, and executes a conveyance to secure the payment of the money, there is no doubt that the instruments will be construed between the parties as a mortgage. And if "A." promises to pay the money if "B." shall perform the act, the construction is the same. In other words, the question whether an instrument amounts to a mortgage does not depend upon whether the mortgagor absolutely or conditionally promises to make the payment.

In ascertaining whether the transaction amounts to a mortgage, the real nature of the stipulations between the parties must be looked into, and therefrom the intent of the parties is to be ascertained. And if the instrument, which is in form a deed of conveyance, was in fact intended to secure the performance of an agreement on the part of the maker of the instrument, or of some person for whom he undertook to be responsible, it will be held to be a mortgage. So in this case Donner and Yontz promised to pay two thousand five hundred dollars should the two witnesses mentioned be procured, and the deed was given to secure the performance of that undertaking. When an instrument is once determined to be a mortgage, the familiar rule applies: "Once a mortgage, always a mortgage." In determining whether it be a mortgage, the question is not whether the conditions are legal or illegal. It may be admitted that the agreement on the part of Lander or Swazy to procure the two witnesses was contrary to public policy, but that fact does not change the character of the instrument and make a deed of conveyance out of a mortgage. The question of the legality or illegality of the condition is important only when it is attempted to enforce the instrument as a mortgage. It may readily be admitted that if a condition in a deed of conveyance be illegal, the deed will take effect without regard to the condition; but that principle is not involved in this case. If the transaction be found to amount to a mortgage, there is no principle of law,

so far as I am aware, that will convert it into a deed, by striking out the defeasance, because it contains an illegal condition. I am therefore unable to concur in the opinion of Mr. Justice McKINSTRY.

Mr. Chief Justice WALLACE, having been of counsel, did not participate in the decision of this case.