In re Richard Edwin JOB, Jr., Debtor.

WELLS FARGO BANK, Appellant,

v.

Richard E. JOB, Jr., Eugene J. Albertini, Chronometrics Financial Inc., Chronometrics Inc., and, Chronometrics Manufacturing, Inc., Appellees.

BAP Nos. CC–94–1177–HMV, CC–94–1505.
Bankruptcy No. LA91–89690 CA.
Adv. No. 91–07041 CA.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 19, 1995.

Memorandum Filed Oct. 20, 1995.

Opinion on Motion for Rehearing Filed July 11, 1996.

Teresa L. Stricker, San Francisco, CA, for Appellant.

Eugene J. Albertini, Los Angeles, CA, for Appellees.

Before: HAGAN, MORGAN [1], and VOLINN, Bankruptcy Judges.

### OPINION

HAGAN, Bankruptcy Judge:

Appellant, Wells Fargo Bank ("Wells Fargo") filed this action for collection of a promissory note in the Superior Court of California, Orange County, against the maker, Chronometrics Financial Inc. ("Chron–Financial"), and its guarantors: Richard E. Job (the "Debtor"), Chronometrics, Inc. ("Chronometrics"), Chronometrics Manufacturing ("Chron–Manufacturing") and Eugene J. Albertini ("Albertini"). Albertini was the president and principal shareholder of Chronometrics, Chron–Financial and Chron–Manufacturing. The Debtor was a minor shareholder of the corporations.

After the Debtor filed his chapter 11 petition, the defendants removed the action to U.S. Bankruptcy Court for the Central District of California. The bankruptcy court granted summary judgment in favor of the defendants, and later awarded defendant Albertini his attorney fees. Wells Fargo timely appealed both orders.

---

1. Hon. Marilyn Morgan, Bankruptcy Judge for the Northern District of California, sitting by designation.

The appeals were consolidated on June 8, 1994, and on October 20, 1995, we entered an order affirming the bankruptcy court's determinations. Wells Fargo filed a motion for rehearing on October 30, 1995. On December 27, 1995, we granted a rehearing of the award of attorneys fees,[2] but denied the motion as to the award of summary judgment.[3]

### FACTUAL BACKGROUND

The facts relating to Albertini's representation of himself and the other defendants are as follows:

Albertini is an attorney and the surviving partner of Albertini and Gill. Albertini and various associates employed by him represented the Debtor and the other defendants both in state court and after the removal to bankruptcy court.

Once summary judgment was awarded to the defendants, Albertini filed a motion for attorneys' fees and costs pursuant to a clause in the promissory note at issue. He requested that the fees be awarded to him alone, and not apportioned between the defendants on the grounds that he alone had incurred them:

Given the tremendous financial drain upon his resources from the Fresno Case and that Chronometrics and Chronometrics Financial had been owned largely by me personally and were no longer in existence by 1988, I did not feel I could bill Job for any of the services performed on the case and I never did so, nor did he ever pay any portion of the billing for the within action (had Job been forced to retain separate counsel herein, because Wells Fargo successfully moved to disqualify me, he would have had to pay for representation herein, which he could not afford to do at that time). Moreover, in September of 1991, Job filed for protection under the United States Bankruptcy Code, Chapter 11, and there was thus a stay in effect as to him in this action; Wells Fargo thereafter, in reality, pursued only me ... As noted, neither Chronometrics nor Chronometrics Financial were in existence any longer by the time Wells Fargo filed its suit, so there was certainly no payment of fees from

them. There is thus no basis to apportion the fees incurred; they were all incurred an borne solely by myself.

Declaration of Eugene J. Albertini in Support of Motion, for Costs, Expenses, and Reasonable Attorneys' Fees, January 26, 1994, ¶ 10.

Wells Fargo contended before the bankruptcy court that the $379,972.25 in attorney's fees requested by Albertini were excessive, but did not contend that Albertini was not entitled to his reasonable fees and costs.

### DISCUSSION

On appeal, Wells Fargo first raised the argument that Albertini was not entitled to an award of attorney's fees because he represented himself.

Generally, an appellate court will not consider arguments not first raised before the district court unless there were exceptional circumstances. *Villar v. Crowley Maritime Corp.*, 782 F.2d 1478, 1483 (9th Cir. 1986). The specific "exceptional circumstances" that this circuit has identified are as follows: (1) review is necessary to prevent a miscarriage of justice; (2) a new issue arises while an appeal is pending because of a change in the law and (3) the "issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir.1985).

*Briggs v. Kent (In re Professional Inv. Properties of America)*, 955 F.2d 623, 625 (9th Cir.1992), *cert. denied* 506 U.S. 818, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992); *See also Trattoria v. Lansford (In re Lansford)* 822 F.2d 902, 905 (9th Cir.1987) (applying rule to bankruptcy proceeding).

Wells Fargo contends its new defense to the award of attorneys' fees should be considered on appeal because the issue is purely a matter of law which arose on appeal due to a change in the law.

The defense did arise as the result of a new California Supreme Court decision. At

---

2. BAP No. CC–94–1505.

3. BAP No. CC–94–1177.

the time Albertini filed his motion for attorneys fees, the California Courts of Appeal had held that any attorney who represents himself is entitled to his reasonable fees and costs under California Code of Civil Procedure § 1717.[4] *See, Leaf v. City of San Mateo,* 150 Cal.App.3d. 1184, 198 Cal.Rptr. 447 (1984). *Renfrew v. Loysen,* 175 Cal.App.3d 1105, 222 Cal.Rptr. 413 (1985). After we took this case under advisement, the California Supreme Court overruled *Renfrew v. Loysen,* and held that an attorney who represents himself is not entitled to an award of attorney's fees under § 1717. *Trope v. Katz,* 11 Cal.4th 274, 45 Cal.Rptr.2d. 241, 902 P.2d 259 (Cal.Supp.Ct.1995).

Nevertheless, Albertini contends that the *Trope v. Katz* case is not new law because the California Supreme Court had previously held in *Patterson v. Donner,* 48 Cal. 369 (Cal.Sup.Ct.1874), that attorneys acting pro se could not be awarded attorney's fees pursuant to the statutory § 1021. The California Supreme Court summarized the previous attorney's fee law in *Trope v. Katz.* It noted that California has followed the "American rule" that each party to a lawsuit must pay his own attorney's fees. *Trope v. Katz,* 11 Cal.4th at 278–279, 45 Cal.Rptr.2d at 244–245, 902 P.2d at 262–263. The California legislature codified this rule in 1872. *See* California Code of Civil Procedure § 1021. However, § 1021 provided that awards of attorneys' fees could be made upon "agreement, express or implied of the parties."

As early as 1874, the California Supreme Court held that the contractual exception to § 1021 did not allow an award of attorneys fees to a plaintiff attorney who had represented himself through-out the litigation. *Patterson v. Donner, supra.* In 1968 the California Legislature replaced § 1021 with § 1717. Although § 1717 also provides a contractual exception to the American Rule, the language of section 1717 differs substantially from the former § 1021. In addition the new section broadened the contractual exception to include the award of attorneys' fees to the prevailing party regardless of whether he or she is the party specified in the contract.

After the passage of § 1717, the California Supreme Court suggested in dicta that it intended to overrule its earlier ban on the award attorneys' fees to persons representing themselves:

> [T]he logic of past decisions that do not allow an attorney to recover fees when he appears on his own behalf is unclear. Although such an attorney does not pay a fee or incur any Financial [sic] liability therefor, to another, his Time [sic] spent in preparing and presenting his case is not somehow rendered less valuable because he is representing himself rather than a third party. Accordingly, it would appear he should be compensated when he represents himself if he would otherwise be entitled to such compensation.

*Consumers Lobby Against Monopolies v. Public Utilities Com.,* 25 Cal.3d 891, 915 n. 13, 160 Cal.Rptr. 124, 138 n. 13, 603 P.2d 41, 55 n. 13 (Cal.Sup.Ct.1979) (holding that non-attorney representing himself before the Public Utilities Commission was entitled to attorney fees because, Public Utilities Commission rules allowed him to represent himself and the non-attorney's efforts resulted in a $400,000.00 fund to be distributed for the benefit of the public).

Relying on the dicta in *Consumers Lobby,* the California Courts of Appeal in *Leaf v. City of San Mateo,* and *Renfrew v. Loysen,* held that pursuant to California Civil Code § 1717 attorneys representing themselves were entitled to their reasonable fees and costs. Until 1995, the California Supreme Court never construed § 1717. Consequently, *Leaf* and *Renfrew* remained good law until the *Trope v. Katz* decision.

■ The *Trope v. Katz* decision was entered while this appeal was pending. Thus,

---

**4.** California Code of Civil Procedure § 1717 provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in additional to other costs.

the claim that Albertini was not entitled to any attorneys' fees arose while this appeal was pending. Further, the factual record has been fully developed below, and the issue is one of law only. Accordingly, we will entertain Wells Fargo's new defense.

■ Wells Fargo contends that because Albertini represented himself, he is not entitled to an award of attorney fees. Albertini contends that *Trope v. Katz* should not be applied retroactively. Generally, judicial decisions are given retroactive effect. *Waller v. Truck Insurance Exchange, Inc.,* 11 Cal.4th 1, 23–24, 44 Cal.Rptr.2d 370, 382, 900 P.2d 619, 631 (Cal.Sup.Ct.1995) ("Courts of Appeal routinely consider newly published case law that was not available until after entry of judgment in the trial court."); *Newman v. Emerson Radio Corporation,* 48 Cal.3d 973, 978–979, 258 Cal.Rptr. 592, 595, 772 P.2d 1059, 1062 (Cal.Sup.Ct.1989) (judicial decisions are generally applied retroactively, while statutes are generally only applied prospectively). The mere fact that a California Supreme Court overruled a consistent line of court of appeals cases is not sufficient in and of itself to justify "nonretroactivity in the absence of compelling additional reasons." *Newman v. Emerson Radio Corp.,* 48 Cal.3d at 986, 258 Cal.Rptr. at 601, 772 P.2d at 1067.

■ The courts may decline to apply judicial decisions to pending cases, "where a subsequent change in a procedural rule would work to bar a cause of action filed in reliance of the former rule." *Newman v. Emerson Radio Corp.,* 48 Cal.3d at 990, 258 Cal.Rptr. at 603, 772 P.2d at 1070. However, although the *Trope v. Katz* ruling would bar recovery of attorney's fees, the bar is substantive rather than procedural.

■ Other exceptions to the general rule of retrospective application focus on "the extent of reliance by litigants of the former rule." *Newman,* 48 Cal.3d. at 989, 258 Cal. Rptr. at 603, 772 P.2d at 1070 (citing, *Peterson v. Superior Court,* 31 Cal.3d, 147, 152, 181 Cal.Rptr. 784, 642 P.2d 1305 (Cal.Sup.Ct. 1982)).

The most compelling example of such reliance occurs when a party has acquired a

vested right or entered into a contract based on the former rule, and we [the California Supreme Court] are more reluctant to apply our decisions retroactively in those cases.

*Newman,* 48 Cal.3d. at 989, 258 Cal.Rptr. at 603, 772 P.2d at 1070.

■ Clearly, Albertini did not enter into the loan agreement at issue here in reliance on his ability to obtain attorneys' fees for his pro se representation of himself in the event either he or the bank sued. Further exception must also be considered in light of the foreseeability of a change in the law. Here, not all of the Appellate Districts had ruled on the issue, there remained Supreme Court decisions stating to the contrary. Accordingly, we conclude the *Trope v. Katz* decision should be applied retroactively.

■ In the alternative, Albertini contends that *Trope v. Katz* is distinguishable because he also represented not only himself, but also the other defendants. However, the attorneys' fees were, at Albertini's request awarded to Albertini alone, and not to any of the other defendants. Further, Albertini stated in his declaration that he had not charged the other defendants for his representation. The fact Albertini did not bill the other defendants is critical because the California Supreme Court based its decision on strict statutory construction of the words "incur" and "attorney fees":

[B]y its terms section 1717 applies only to contracts specifically providing that attorney fees "which are incurred to enforce that contract" shall be awarded to one of the parties or to the prevailing party. [italics omitted.] To "incur" a fee, of course, is to "become liable" for it (Webster's New Internat.Dict. (3d ed.1961) p. 1146), i.e., to become obligated to pay it. It follows that an attorney litigating in propria persona cannot be said to "incur" compensation for his time and his lost business opportunities.

.... Similarly, Webster's defines the word "fee" as "compensation often in the form of a fixed charge for professional service or for special and requested exercise of talent or of skill." (Webster's New

Internat.Dict., supra, p. 833; see also 5 Oxford English Dict. (2d ed. 1989) p. 797 ["fee" denotes "a payment," such as the "remuneration paid or due to a lawyer, a physician, or (in recent use) any professional man, a director of a public company, etc. for an occasional service"].) Accordingly, the usual and ordinary meaning of the words "attorney's fees," both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation. An attorney litigating in propria persona pays no such compensation. *Trope v. Katz,* 11 Cal.4th at 280, 45 Cal. Rptr.2d at 245–246, 902 P.2d at 263–264.

In this case, the other defendants were not contractually obligated to pay Albertini. Thus they cannot be said to have incurred, i.e. become liable for attorney fees. Further, even if the other defendants had incurred attorney's fees, the order on appeal awards the fees to Albertini. Thus the remaining defendants' right, if any, to attorney fees is not before us.

■ Next, Albertini contends that *Trope v. Katz* should be distinguished because in *Trope* the law firm appearing pro se was the plaintiff, and he appeared pro se as a defendant. However, it is not logical to suggest the words "to incur attorney's fees" would have a different meaning where a pro se litigant defended rather then prosecuted a case.

■ Albertini also contends that *Trope* should not be applied in this case because he was forced by economic circumstances to litigate the case. However, many if not most pro se litigants are forced to do without an attorney because of economic circumstances. No economic hardship exception to the rule applies to nonattorneys. To allow a hardship exception to attorneys would result in different treatment of attorneys and nonattorneys. As explained by the California Supreme Court, such an exception would conflict with the statutory purpose of § 1717:

The statute was designed to establish mutuality of remedy when a contractual provision makes recovery of attorney fees available to only one party, and to prevent the oppressive use of one-sided attorney fee provisions. [citations omitted]. If an attorney who is the prevailing party in an action to enforce a contract with an attorney fee provision can recover compensation for the time he expends litigating his case in propria persona, but a nonattorney pro se litigant cannot do so regardless of the personal and economic value of such time simply because he has chosen to pursue a different occupation, every such contract would be oppressive and one-sided.

*Trope v. Katz,* 11 Cal.4th at 285, 45 Cal. Rptr.2d at 249, 902 P.2d at 267.

■ Next, Albertini contends that he did not represent himself, but that his firm Albertini & Gill represented him. In light of the fact that Albertini & Gill is an unincorporated business owned since Gill's death, solely by Albertini, this argument is frivolous. Albertini is Albertini & Gill and Albertini & Gill is Albertini. No distinction can be made between them.

Having failed to demonstrate that he is entitled to the entire award of attorney's fees, Albertini contends that he did incur fees owed to his associates, and that at a minimum these fees should be compensated. Wells Fargo contends that *Trope v. Katz* precludes this argument because the law firm of Trope and Trope necessarily used its employees to litigate the case. However, it is not clear from the opinions in *Trope v. Katz* whether the law firm had any employees other than its partners.

Further, the California Supreme Court specifically declined to determine whether a party could be awarded attorneys fees for representation by in house counsel:

Finally, Trope & Trope contends that the application of *Patterson* and *Sten* in this context would conflict with the "developing body of law" on the question whether a litigant can recover attorney fees if he was represented by in-house counsel. (*See Garfield Bank [v. Folb], supra,* 25 Cal. App.4th 1804, 31 Cal.Rptr.2d 239 [ (1994) ].) It reasons that if we hold that a litigant cannot recover attorney fees unless actually paid or became liable to pay consideration in exchange for legal repre-

sentation, it would mean that a litigant represented by in-house counsel could not recover such fees because it paid its attorney a salary rather than a fee. The conclusion does not necessarily follow, because an argument can be made that in such circumstances the salary is the functional equivalent of the fee. Resolution of that question, however, must await another day: we have no occasion in this case to decide whether a litigant represented by in-house counsel can or cannot recover "reasonably attorney's fees" under section 1717, and nothing in our opinion should be read as endorsing or precluding such an award.

*Trope v. Katz*, 11 Cal.4th at 291, 45 Cal. Rptr.2d at 253, 902 P.2d at 271.

Likewise, it can be argued that the fact Albertini paid his associates a salary rather than a fee in exchange for legal services is the "functional equivalent of a fee." However, as stressed by the California Supreme Court, dicta is not binding on future cases. In the binding portion of *Trope v. Katz*, the court held that pursuant to section 1717, the fee must be "incurred **to enforce that contract.**" (emphasis added). Albertini has incurred an obligation to pay his associates, but that duty arises out of the fact that he hired them to work for his firm, not because he specifically hired them to represent him in this litigation. Therefore the salary he pays his associates cannot be said to have been incurred to enforce the promissory notes. The fact that Albertini choose to divert his associates from work for his clients to work for himself does not change his obligation to his associates and therefore does not cause him to have incurred attorney's fees to his associates. Accordingly, as he has not "incurred" attorneys' fees, *Trope v. Katz* precludes an award of attorneys' fees to Albertini.

## CONCLUSION

Pursuant to the California Supreme Court's recent decision in *Trope v. Katz*, we reverse the bankruptcy court's order awarding defendant Albertini attorneys' fees for representation of himself. We affirm the bankruptcy court's order as to costs.