[Civ. No. 57541. Second Dist., Div. Two. Feb. 5, 1980.]

ROY ALBERT MAU, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
PEGGY LYNN KENT, Real Party in Interest.

COUNSEL

Gilbert, Kelly, Crowley & Jennett, Patrick A. Mesisca, Jr., and Clifford H. Woosley for Petitioner.

No appearance for Respondent.

Michael D. Daniels for Real Party in Interest.

OPINION

BEACH, J.—

## NATURE OF CASE:

Defendant in a negligence action seeks a writ to prohibit the trial court from allowing plaintiff therein to seek punitive damages. We issued an alternative writ and granted hearing.

## BACKGROUND:

Petitioner is a defendant in a negligence action arising from a traffic collision. Petitioner admitted liability for the collision. The case was ready to proceed to trial upon the remaining issues of causation for and the extent of plaintiff's injuries and damages. While the instant matter was awaiting trial, the California Supreme Court rendered its decision in *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890 [157 Cal.Rptr. 693, 598 P.2d 854], holding that punitive damages are recoverable against an intoxicated driver causing injury. Relying on the *Taylor* decision, the trial court herein granted plaintiff's request to amend her complaint to allege defendant's intoxication and to include a prayer for punitive damages on the basis that defendant (petitioner herein) was an intoxicated driver at the time of the accident. Petitioner sought writ from this court to prohibit the trial court from allowing the amendment to the complaint and from allowing discovery based on the alleged right to recover punitive damages.

## ISSUE AND OUR HOLDING:

The question before us is: shall the decision of *Taylor* v. *Superior Court* be given retroactive effect? Our answer is no.

## DISCUSSION:

The basis for the recovery of punitive damages in tort actions has been and is Civil Code section 3294.[1] It reads: "In an action for the

---

[1]The designation "section 3294" herein without more refers to Civil Code section 3294.

breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." That section has never been applied to permit recovery against an intoxicated driver causing a collision. In 1937 the Court of Appeal in *Strauss* v. *Buckley* (1937) 20 Cal.App.2d 7, 8 [65 P.2d 1352], without reference to the code section, simply stated that in a case arising out of a traffic collision, "punitive damages are not recoverable because of the drunkenness of the defendant." That statement reflected the general common law rule that there was no "punishment" for a nonintentional but negligent act. That common law rule recognized that the purpose of the tort law was to make plaintiff whole, to provide recompense and not to impose punishment. Twenty-one years later in *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517 [322 P.2d 933], the court restated and reaffirmed the general rule. The opinion carefully explained the history, background and reasons therefor. In its decision the court specifically referred to section 3294, holding that the intoxication of the driver of an automobile causing a collision does not constitute the "malice" referred to in section 3294. *Taylor* expressly disapproved of *Gombos* and held that section 3294 does in fact provide for the recovery of punitive damages against such an intoxicated driver. The court in *Taylor* held that the defendant's act of driving a vehicle while intoxicated as pleaded therein stated a cause of action for the recovery of punitive damages. The opinion in *Taylor*, however, did not state whether the holding thereof shall or shall not be retroactively applied to cases then pending but not yet tried. That matter is presented squarely to us and we must decide it without the assistance of any hints in the majority opinion of *Taylor*.

We find nothing in the Supreme Court's language in *Taylor* that compels a particular answer to the specific question before us. Nonetheless, there is discussion in and guidance from other cases of the court. ■ In *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680 [312 P.2d 680], the court states: "The law is settled that there is no constitutional objection to an appellate court's making a choice for itself, in overruling an earlier decision, whether the new rule declared by it shall operate prospectively only or apply retrospectively. [Citations including *Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.* (1932) 287 U.S. 358, 363 et seq. (77 L.Ed. 360, 365 et seq., 53 S.Ct. 145, 85 A.L.R. 254).] [¶] The determination by the court is dependent upon the equities in each case. It is the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospec-

tive in its operation and that the effect is not that the former decision was bad law but that *it never was the law.*" (*County of Los Angeles* v. *Faus* (1957) *supra,* 48 Cal.2d 672, 680-681, italics added.)

Similarly, in *Forster Shipbldg. Co.* v. *County of L.A.* (1960) 54 Cal.2d 450, 458-459 [6 Cal.Rptr. 24, 353 P.2d 736], the court explains the traditional view as follows: "Under traditional theory an overruled decision is considered not to have established bad law, but to have merely misstated the law. The overruling decision is deemed to state what the law was from the beginning, and is therefore generally given retroactive effect. (*County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 680-681 [312 P.2d 680].)"

If applied here, the theory that the law unequivocally stated in a former decision (*Gombos* v. *Ashe*) was never the law would be pure fiction. *Gombos* clearly explains the law that had been expressly stated 21 years earlier and which remained the law for 20 years thereafter. The inapplicability of the "it-never-was" theory is made more apparent by the fact that the established law as stated in *Gombos* was carefully described and explained by a meticulous and careful legal craftsman and scholar, then Presiding Justice Raymond Peters. Moreover, our reading of *Taylor* indicates that *Taylor* makes no pretense of relying on the fiction. The court in *Taylor* makes clear that its decision is a *change* in the law. The majority opinion does not argue or declare any misstatement of the past law by past cases. Rather it boldly faces the admitted need for a new rule based on a changed condition. That condition is the increased seriousness of the problem of the intoxicated driver, a seriousness punctuated by increased death and tragedy. The decision is permeated with support based upon recent decisions, studies and developments. For example, after citing a recent Oregon case which upheld an award of punitive damages against a drunken driver, the *Taylor* opinion states: "Indeed, under another recent amendment enacted following our *Coulter* decision, the Legislature has expressly acknowledged that 'the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person.' (Civ. Code, § 1714, subd. (b).)" (*Taylor* v. *Superior Court, supra,* 24 Cal.3d 890, 897-898.) *Taylor* also relies upon such studies as the Third Special Report of the Secretary of Health, Education and Welfare in June 1978 to the United States Congress on Alcohol and Health, which cited the 1975 study of traffic deaths involving alcohol, and the February 21, 1979, report of the Comptroller General of the United States Congress calling for the need for increased judicial support (*id.* at

pp. 898-899). These examples indicate that this is a new rule, a change from the established rule and required by an increase in the problem in recent years, as confirmed by recent reports.

Another consideration favors prospective application of *Taylor.* ▪ Again, the language of our Supreme Court in *County of Los Angeles* v. *Faus* and *Forster Shipbldg. Co.* provide help. *County of Los Angeles* v. *Faus* explains: "A well-recognized exception to this general rule [of retroactive effect] is that, where a constitutional provision or statute has received a given construction by a court of last resort and contracts have been made or property rights acquired under and in accordance with its decision, such contracts will not be invalidated nor will vested rights acquired under the decision be impaired by a change of construction adopted in a subsequent decision. Under those circumstances it has been the rule to give prospective, and not retrospective, effect to the later decision." (*County of Los Angeles* v. *Faus, supra,* 48 Cal.2d 672, 681.)

In *Forster* the court said: "In recent years much attention has been given to the problem of mitigating the hardships caused by an overruling of established law....[Citations.]....In most jurisdictions, however, courts have established exceptions to the general rule of retroactivity to protect those who acted in reliance on the overruled decision. (See 21 C.J.S. § 194, pp. 326-330, and cases there cited.) The Supreme Court of the United States has held that the United States Constitution does not compel retroactive application of overruling decisions. 'A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions...whenever injustice or hardship will thereby be averted.' (*Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.,* 287 U.S. 358, 364 [53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254].) State courts have generally found state constitutions equally permissive and have frequently stated that the decision whether to apply an overruling decision retroactively or prospectively only turns on considerations of fairness and public policy. [Citations.] [¶] We have hitherto recognized that the California Constitution permits an appellate court to apply an overruling decision prospectively only, even though it thereby temporarily preserves and applies a mistaken interpretation of the Constitution. (*County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 681 [312 P.2d 680].)"

Such temporary and limited application is proper "if reasonably designed to mitigate hardships caused by [the court's] subsequent rejection of the rule." (*Forster Shipbldg. Co.* v. *County of L.A., supra,* 54 Cal.2d 450, 459.)

■ The matter at bench does not exactly fit into the classical exemption described in *Faus*. This exemption is more understandable when applied to matters of contracts between persons. At bench there is no contractual conduct or other business or commercial intercourse transacted between the parties under or in accordance with any particular interpretation of existing law. As a practical reality it is safe to say defendant here when driving was totally unaware of the presence or absence of any punitive damages rule. Nonetheless, traditional contractual relation is not the only basis for exception. Although we do not search for and catalog all such exceptions, another reason for excepting the instant case from retroactive application is the one expressed in the language of *Forster* quoted earlier, i.e., to avoid injustice and hardship , to others. The parties at bench, and no doubt the parties in numerous other similar actions awaiting trial on allegations of intoxicated driving, are not the only ones who would be affected by the retroactive application of the *Taylor* decision. In view of the California law requiring ability to respond in damages (Veh. Code, § 16020), it is reasonable to assume that in most of such cases an insurer is very much involved and concerned with the progress and outcome in each case. Automobile insurers generally will be affected. Insurers individually and the insurance industry generally have set their premiums upon the calculated risks, tables of experience and probabilities of damage awards under existing law. Whatever may be in these data, it did not include the added exposure for punitive damages. Individual policies of liability insurance may have complete exclusions of coverage for any intentional or malicious act resulting in punitive damages. In this respect, the insurance industry may have relied upon the status of the law of damages as expressed in *Gombos* to a far greater extent than the individual driver involved in a collision.

Punitive damages are disfavored. The award of punitive damages as permitted by the *Taylor* decision is recognized in *Taylor* as a form of punishment admittedly imposed in an effort to deter persons from driving automobiles after drinking. (*Taylor* v. *Superior Court, supra,* 24 Cal.3d 890, 897, 899.) This creates then not merely a change in the rule of damages recoverable by a plaintiff but imposes a penalty or punishment on the defendant. Under the idea of fair warning, a law

increasing punishment or penalty for prohibited conduct has been universally applied prospectively only. The only justification for punitive damages or punishment is its hoped for deterrent effect on others. Such punishment cannot be justified on any notion of retribution or revenge. Regardless of the merits of the debate of whether the threat of punishment in fact deters antisocial conduct, it clearly cannot have that effect unless the threat exists prior to the commission of the antisocial act. While *Taylor* expressly disapproves of *Gombos*, we read that disapproval as limited to the statement in *Gombos* regarding *nonrecoverability* of punitive damages rather than to the reiteration in *Gombos* of the universal *dislike* of punitive damages. Disfavored or not, *Taylor* thoroughly explains the need for and why, irrespective of the general rule or attitude against punitive damages, such recovery should be and shall be allowed in cases of intoxicated driving. *Taylor*, however, does not similarly dispose of the reasons, including the disfavor, which militate against the retroactive application.

For the reasons we have set forth, we conclude that the law as announced in *Taylor*, allowing recovery of punitive damages should be applied prospectively only; petitioner is entitled to the writ enjoining the trial court from allowing the amendment of the complaint to seek punitive damages.

Let a peremptory writ of mandate issue directing respondent court to vacate the order of September 28, 1979, granting the motion of plaintiff and real party in interest to amend the complaint in Los Angeles Superior Court number NEC 22869 and enter a new and different order denying said motion.

Roth, P. J., and Compton, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied April 3, 1980.