[L.A. No. 31439. Apr. 8, 1982.]

DONALD R. PETERSON et al., Petitioners, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
NORMAN THOMPSON, Real Party in Interest.

148

COUNSEL

Heily, Blase & Ellison, Heily, Blase, Ellison & Wellcome and Jay H. Sorensen for Petitioners.

Leonard Sacks, Harvey R. Levine, Edward I. Pollock, Robert E. Cartwright, William M. Shernoff, Stephen I. Zetterberg, Sanford M. Gage, Arne Werchick, Ian Herzog, Glen T. Bashore, Wylie Aitken, Victoria J. De Goff and James R. McGrath as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Archbald & Spray, Robert F. Harris and Heather Scott Cissna for Real Party in Interest.

Gilbert, Kelly, Crowley & Jennett, Patrick A. Mesisca, Jr., Clifford H. Woosley and Peter J. Godfrey as Amici Curiae on behalf of Real Party in Interest.

OPINION

**BROUSSARD, J.**—Petitioners (hereafter plaintiffs) seek a writ of mandate to command respondent court to grant their motion for leave to file a first amended complaint. Their petition presents the question whether the rule announced in *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890 [157 Cal.Rptr. 693, 598 P.2d 854], that punitive damages are recoverable from an intoxicated driver who causes personal injury, should apply retroactively to accidents that occurred or complaints filed before this court decided *Taylor* on August 21, 1979. Assessing the considerations governing retroactive application of overruling decisions, we conclude that the *Taylor* rule should be applied retroactively.

Plaintiff Donald Peterson was a passenger in a car driven by defendant/real party in interest Thompson. The original complaint seeks recovery of damages for personal injuries to Donald Peterson and by plaintiff Doris Peterson for loss of services of Donald as husband and provider. Plaintiffs seek to allege that defendant drove with excessive speed after consuming alcohol, and that defendant lost control of the vehicle causing personal injury to plaintiff Donald Peterson. The pro-

posed complaint further alleges that defendant acted with knowledge that probable serious injury to others would result and in conscious disregard of the safety of plaintiff and others. If allowed, such allegations could support a finding of malice within the meaning of Civil Code section 3294[1] as interpreted by *Taylor*, and thus an award of punitive damages.

The automobile accident occurred on April 24, 1979. Plaintiffs' complaint was filed on April 11, 1980. On August 21, 1979, between the two cited dates, this court decided *Taylor, supra*, holding that punitive damages are recoverable in a personal injury action against an intoxicated driver who causes personal injury.

In July 1980, plaintiffs moved to amend their complaint in accordance with *Taylor*. The trial court denied the motion, relying on *Mau v. Superior Court* (1980) 101 Cal.App.3d 875 [161 Cal.Rptr. 895], which held that *Taylor* was to be prospectively applied. In December 1980, plaintiffs again moved to amend their complaint to include punitive damages, relying that time on *Busboom v. Superior Court* (1980) 113 Cal.App.3d 550 [169 Cal.Rptr. 886], which declined to follow *Mau* and held that *Taylor* was to be retroactively applied. The trial court again denied the motion.

Our discussion begins with a review of the general considerations regarding the retroactivity of overruling decisions. ■ We start with the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation.[2] (*County of*

---

[1] When the complaint below was filed, Civil Code section 3294 read: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." By amendments effective January 1, 1981, the Legislature deleted "express or implied," after "or malice," renumbered this provision to section 3294, subdivision (a), and added subdivisions (b) and (c). Subdivision (c)(1) defines "malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or conduct which is carried on by the defendant with a *conscious disregard of the rights or safety of others*." (Stats. 1980, ch. 1242, § 1, p. 4217; italics added.)

[2] Defendant urges that *Wilke & Holzheiser, Inc. v. Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349 [55 Cal.Rptr. 23, 420 P.2d 735], represents an example of a case where this court refused to retroactively apply deterrent legislation. The issue for which *Wilke* has been cited was whether to retroactively apply a legislative change in the method of enforcement of the retail price maintenance provisions of the Alcoholic Beverage Control Act. Defendant's reliance on *Wilke* is misplaced for the simple reason that the general rule regarding retroactivity of legislation is the opposite of the rule re-

*Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680].) We have recognized exceptions to that rule when considerations of fairness and public policy preclude full retroactivity. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 850 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) For example, where a constitutional provision or statute has received a given construction by a court of last resort, and contracts have been made or property rights acquired in accordance with the prior decision, neither will the contracts be invalidated nor will vested rights be impaired by applying the new rule retroactively. (See *County of Los Angeles* v. *Faus, supra*, 48 Cal.2d at p. 681.) The present case, however, involves neither contract nor vested property rights, and as we shall see, weighing considerations of fairness and public policy, no compelling reason exists for excepting *Taylor* from the general rule that overruling decisions are to be retroactively applied.

Defendant asserts that the criteria articulated by the United States Supreme Court in the criminal area comprise the proper guide for deciding whether to apply an overruling decision retroactively, and that as to this case, a prospective application of the *Taylor* rule is warranted. Those criteria implicate "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." (*Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967].) The primary consideration is the purpose to be served by the new rule. (*In re Joe R.* (1980) 27 Cal.3d 496, 511 [165 Cal.Rptr. 837, 612 P.2d 927]; *Desist* v. *United States* (1969) 394 U.S. 244, 249 [22 L.Ed.2d 248, 255, 89 S.Ct. 1030].)

The rule established by this court in the context of civil actions is not inconsistent with the rule laid down by the United States Supreme Court. As we have noted, in the civil context, the question of retroactivity depends upon considerations of fairness and public policy. (*Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322, 333 [146 Cal.Rptr. 550, 579 P.2d 441]; *Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 74 [145 Cal.Rptr. 368, 577 P.2d 188]; *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) In *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 193 [98 Cal.Rptr. 837, 491 P.2d 421], this court character-

garding retroactivity of judicial decisions: "We begin with the general presumption that legislative changes do not apply retroactively unless the Legislature expresses its intention that they should do so." (*Wilke, supra*, 65 Cal.2d at p. 371.)

ized the issue of prospective application as turning "primarily upon the extent of the public reliance upon the former rule [citation], and upon the ability of litigants to foresee the coming change in the law. [Citation.]"[3]

Considerations of fairness and public policy comprehend the more specific factors enunciated by the court in *Stovall* v. *Denno, supra,* 388 U.S. at page 297 [18 L.Ed.2d at pages 1203-1204]. Public policy considerations include the purpose to be served by the new rule, and the effect on the administration of justice of retroactive application. Considerations of fairness would measure the reliance on the old standards by the parties or others similarly affected, as well as "the ability of litigants to foresee the coming change in the law . . . ." (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at p. 193.)

In *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, this court gave limited retroactive effect to the rule of "pure" comparative negligence, in view of the substantial number of cases involving that matter then pending in the trial and appellate courts, and particularly considering the "reliance applicable to individual cases according to the stage of litigation which they have reached . . . ." (*Id.,* at p. 829.) Thus the court gave consideration to the reliance of the parties within the context of the lawsuits themselves, as well as impliedly recognizing the impact of the retroactivity decision on the administration of the judicial system. Similarly, in *Isbell* v. *County of Sonoma, supra,* 21 Cal.3d 61, we gave limited retroactive application to our decision declaring the California confession of judgment procedure unconstitutional. Applying fairness and public policy considerations, the court allowed the plaintiffs the benefit of the decision, as well as providing that any judgment debtor could apply for a hearing to challenge the validity of the waiver on his confession of judgment. (*Id.,* at p. 75.)

In other cases, considerations of fairness and public policy have led us to give full retroactive effect to overruling decisions. In *Safeway Stores*

---

[3]Other formulations of the rule contemplate a similar approach to the question. One author has suggested that in deciding whether to retroactively apply an overruling decision, the court should identify the purposes of the new rule and determine whether on balance those purposes would be served by retroactive application generally and in the case before the court. After considering whether the purposes of the new rule will be served by retroactive application, the court should consider the element of surprise that would result from retroactive application of the new rule, as well as the effect on the administration of the courts. (See Note, *Prospective Overruling and Retroactive Application in the Federal Courts* (1962) 71 Yale L.J. 907.)

*Inc.* v. *Nest-Kart, supra,* 21 Cal.3d 322, we applied retroactively the rule adopted in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], permitting partial indemnity among multiple tortfeasors on a comparative fault basis. *Safeway* applied the doctrine to a strictly liable defendant and a negligent defendant, in a case tried before this court's decision in *American Motorcycle.* In view of the foreshadowing of the rule by *Li, supra,* 13 Cal. 3d 804, this court concluded that no undue surprise or unfairness would result in applying the *American Motorcycle* decision to the *Safeway* parties and those in other cases in which the issue of comparative indemnity had been properly preserved. (21 Cal.3d at p. 333.) Anticipating that a substantial number of trial courts probably had utilized special findings allocating responsibility among multiple defendants, this court concluded that applying *American Motorcycle* retroactively to extend the benefit of the rule to those defendants who had diligently pursued the issue would not result in a serious disruption of the administration of justice. (21 Cal.3d at p. 334.)

Similarly, in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 176, this court retroactively applied its announced rule that a cause of action for legal malpractice does not accrue until the client discovers, or should discover, the facts establishing the elements of his cause of action. The court observed that attorneys do not commit malpractice in reliance on the statute of limitations (*id.,* at p. 193), and that a change in the rule on accrual of legal malpractice actions could fairly have been foreseen by the defendants and others in the legal profession. (*Id.,* at p. 194.)

■ In the present case, defendant makes essentially two related arguments against retroactive application of the *Taylor* rule. First, he argues that punitive damages cannot have a deterrent effect when the prohibited conduct is already complete. Second, he argues that it would be unfair to impose a new rule retroactively when litigants and insurers have relied on the old rule. Neither argument is persuasive. As we shall see, imposing punitive damages retroactively in this case furthers their deterrent purpose, and it cannot be said that the parties or others have relied on the old rule prohibiting punitive damages or that the change wrought by *Taylor* was not foreseen.

Arguments similar to those raised by defendant in this case were rejected by the court in *Busboom* v. *Superior Court, supra,* 113 Cal. App.3d 550. In that case, one plaintiff was injured when he fell from

his motorcycle while trying to avoid a car driven by the defendant. The original complaint was filed before *Taylor*, but after that decision became final the trial court granted leave to amend the complaint to allege that the defendant voluntarily consumed alcohol, knowing he would then operate a motor vehicle, and drove while drunk, aware of the probable dangerous consequences of his action. The complaint alleged that that conduct showed conscious disregard for the safety and interest of others. The trial court later granted partial summary judgment eliminating those allegations and the claim for punitive damages. The *Busboom* court issued a writ of mandate directing the trial court to vacate its order, reasoning that "[o]verruling decisions, especially in the tort field, are normally applied retroactively unless there has been great public reliance on the earlier rule, the new rule was nowhere foreshadowed, and it would be unfair to apply the rule retrospectively. [Citations.]" (*Id.*, at p. 553.) Concluding that none of these exceptions were applicable, the court found that *Taylor* had been foreshadowed by other cases allowing punitive damages based on a finding of conscious disregard of safety, that retrospective application of *Taylor* would be neither unfair nor unreasonable, and that it would not place an unconscionable burden on insurance companies.

We reject defendant's claim, based on the rationale of *Mau* v. *Superior Court, supra*, 101 Cal.App.3d 875, that the deterrent purpose of punitive damages cannot be furthered when the prohibited conduct is complete. The primary purpose of punitive damages is "to penalize wrongdoers in a way that will deter them and others from repeating the wrongful conduct in the future." (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 790 [157 Cal.Rptr. 392, 598 P.2d 45]; accord, *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 409 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) Although there is much debate about the effectiveness of punitive damages as a deterrent to drunk driving (see, e.g., *Taylor, supra*, 24 Cal.3d at pp. 903-904 (dis. opn. of Clark, J.); *Busboom, supra*, 113 Cal.App.3d at p. 553), the assumption of the majority in the *Taylor* decision was that imposing punitive damages would have a deterrent effect. Our decision to apply *Taylor* retroactively reiterates this court's resolve to support "all possible means of deterring persons from driving automobiles after drinking . . ." (*Taylor, supra*, 24 Cal.3d at p. 897 [italics omitted], quoting *Harrell* v. *Ames* (1973) 265 Ore. 183 [508 P.2d 211, 214-215, 65 A.L.R.3d 649]) and is a legitimate means of furthering the deterrent purpose of punitive damages.

In our opinion, *Mau* v. *Superior Court, supra,* 101 Cal.App.3d 875, erroneously concluded that retroactive application of the *Taylor* rule could not further the deterrent purpose of punitive damages. The *Mau* court opined that the only justification for punitive damages is its hoped for deterrent effect on others, and that whatever the impact of deterrence, the threat of punitive damages could not have that effect unless the threat exists prior to the commission of the antisocial act. (101 Cal.App.3d at p. 882.) This reasoning conceives the purpose of punitive damages too narrowly, resulting in its rejection of the possibility that imposing punitive damages after the act could further deterrence.

As we have noted, punitive damages not only deter others, but deter the particular wrongdoer from repeating the antisocial conduct. (*Wyatt* v. *Union Mortgage Co., supra,* 24 Cal.3d 773, 790.) Although the deterrent effect is only realized as drivers become aware of the possible liability, once any driver has been found liable for punitive damages, he is aware of the potential in repeating the conduct, and thus would be deterred from repeating the acts that led to imposition of the punitive damages award. Moreover, each such defendant will serve as an example to others, so that they will be similarly deterred from driving while intoxicated. The sooner knowledge of the potential liability saturates the collective consciousness of the driving public, the better the deterrent purpose of the rule is served. Retroactive application will have a potent impact on the driving public as a small but significant group of drunk drivers throughout the state become simultaneously exposed to the prospect of serving as an example to others.

Prospective application would further delay public knowledge of the new rule because the impact of each award would only be felt as individual cases are decided throughout the state. Because of the well-recognized delays in bringing cases to trial, prospective application of *Taylor* could delay its deterrent effects until as late as 1985, diluting the deterrent purpose of the *Taylor* rule.

The *Mau* court based its rejection of retroactive application of *Taylor* on the additional ground that insurance companies may have relied on the old rule. There are several reasons why the asserted reliance by insurance companies on the old rule in setting premium rates is not a legitimate justification for requiring prospective application of the *Taylor* rule. First, as defendant recognizes, insurance policies do not cover punitive damages. (*City Products Corp.* v. *Globe Indemnity Co.* (1979) 88 Cal.App.3d 31 [151 Cal.Rptr. 494].) In addition, as the *Busboom* court

noted, insurance rates are determined considering many factors (113 Cal.App.3d at p. 553); and tort cases, which inevitably affect insurance rates, are normally applied retroactively. (113 Cal.App.3d at p. 554, citing, e.g., *Li* v. *Yellow Cab Co., supra*, 13 Cal.3d 804; *Archibald* v. *Braverman* (1969) 275 Cal.App.2d 253 [79 Cal.Rptr. 723]; *Cummings* v. *Morez* (1974) 42 Cal.App.3d 66 [116 Cal.Rptr. 586].) In *Cummings* v. *Morez*, for example, the court retroactively applied *Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], which held that, as applied to a negligently injured passenger, the California guest statute violates the equal protection guarantees of the California and United States Constitutions. (*Id.*, at p. 882.) The *Cummings* court applied the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in operation. (42 Cal.App.3d at p. 73.) In addition, the *Cummings* court rejected the argument that insurance companies had relied upon the validity of the guest statute. The court reasoned that the question was the plaintiff's rights as against the representative of the deceased driver, and that the presence or absence of insurance is not a factor in determining civil liability. (*Id.*, at pp. 73-74.)

Isolating the factor of potential claims against insured drivers who cause injury due to driving while intoxicated, insurance companies, relying on the old rule, presumably would have set rates at a level anticipating that punitive damages are not recoverable. However, the new rule, allowing punitive damages, would not affect the extent of exposure of insurance companies because public policy prohibits the payment of punitive damage awards by the insurer. (*City Products, supra*, 88 Cal. App.3d 31.)[4] Thus, there could be no detrimental reliance by insurance

---

[4]Although the authorities are split as to whether insurance may cover liability for punitive damages, California has adopted the rule that they are not insurable. "The lead case holding that indemnity against punitive damages is against public policy is the decision of the Fifth Circuit in *Northwestern National Casualty Company* v. *McNulty* (5th Cir. 1962) 307 F.2d 432, 440-441, where the following rationale appears: 'The policy considerations in a state where, as in Florida and Virginia, punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well as nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured.'" (*City Products Corp.* v. *Globe Indemnity Co., supra*, 88 Cal.App.3d 31, 39-40.)

companies on the expectation that punitive damages are not recoverable from the drunk driver causing injury. Therefore, retrospective application of the *Taylor* rule does not create an undue burden on insurance companies.

■ We also reject defendant's claim that imposition of punitive damages negates an insured's coverage for compensatory damages as well as punitive damages. We do not consider conduct amounting to a conscious disregard of the safety of others, sufficient to support punitive damages in the intoxicated driver context, to constitute a wilful act so as to preclude any indemnification under Insurance Code section 533.[5] Examining the interplay between section 533 and the rule prohibiting indemnification of punitive damages reveals why it is erroneous to conclude that coverage is precluded as to all damages in this type of case.

There are two distinct reasons why indemnification of punitive damages is prohibited in California. First is the public policy rationale against diluting the deterrent effect of punitive damages by allowing the impact of the penalty to be shifted to the insurer. This justification applies whatever the basis for the punitive damages award. The second reason is applicable only when the basis for the punitive damages is a wilful act of the defendant. When the defendant commits an intentional tort, the prohibition of section 533 presents an additional reason for disallowing indemnification of the punitive damages, as well as indemnification of the remainder of the plaintiff's recovery. However, because the situations in which punitive damages are allowed include more than just those resulting from intentional torts, indemnification of the entire damage award is not always precluded.

Nonintentional torts may also form the basis for punitive damages when the conduct constitutes conscious disregard of the rights or safety of others. (*Taylor v. Superior Court, supra,* 24 Cal.3d 890; *G. D. Searle & Co. v. Superior Court* (1975) 49 Cal.App.3d 22 [122 Cal. Rptr. 218].) "Nonintentional conduct comes within the definition of malicious acts punishable by the assessment of punitive damages when a party intentionally performs an act from which he knows, or should know, it is highly probable that harm will result. (*Nolin v. National Convenience Stores, Inc.* [(1979)] 95 Cal.App.3d 279, 286 [157 Cal.

---

[5]Insurance Code section 533: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

Rptr. 32], quoting and explaining *Donnelly* v. *Southern Pacific Co.* (1941) 18 Cal.2d 863, 870 . . . . )" (*Ford Motor Co.* v. *Home Insurance Co.* (1981) 116 Cal.App.3d 374, 381 [172 Cal.Rptr. 59].) In those cases, section 533 is not applicable because the harm has not resulted from a "wilful act," thus only indemnification of the punitive damages portion of the recovery is prohibited.

Such is the situation in this case, where an act performed without intent to harm has nevertheless resulted in injury and possible exposure to punitive damages because it was done with conscious disregard of the rights or safety of others. Although indemnification of the punitive damages is disallowed for public policy reasons, the conduct is not wilful as contemplated by section 533. Thus, the policy of insurance would still cover the compensatory damage portion of plaintiff's recovery.

■ Defendant also argues that the principle underlying the ex post facto clauses of the United States and California Constitutions (U.S. Const., art. I, § 9, cl. 3; Cal. Const., art. I, § 9)—that persons have a right to fair warning of conduct that will give rise to criminal penalties (*Marks* v. *United States* (1977) 430 U.S. 188, 191 [51 L.Ed.2d 260, 265, 97 S.Ct. 990])—prohibits retroactive application of the *Taylor* rule in this case. He claims that *Taylor* was effectively a radical departure from precedent that created an imposition of punishment.

Although the principle of fair warning would militate against retroactivity where the change in the law was unexpected, "[t]he decision in *Taylor* was hardly unexpected, and was in fact not foreseeable only by those who chose not to look." (*Busboom, supra*, 113 Cal.App.3d at p. 554.)

The principle case precluding punitive damages in the drunk driving context prior to *Taylor* was *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517 [322 P.2d 933]. In that case, the complaint alleged that defendant "'with absolute disregard and callous indifference to the rights and safety of all persons on said highway . . .'" became "'knowingly and wilfully intoxicated . . . well knowing that . . . the excessive alcoholic refreshments consumed by him rendered him physically unfit to operate a motor vehicle upon said public highway . . . .'" (*Id.*, at p. 526.) The court held that these allegations fell short of alleging malice under Civil Code section 3294, and were therefore insufficient as a basis for punitive damages.

As noted in *Taylor*, when *Gombos* was decided, it was unclear whether an award of punitive damages could be based upon defendant's conscious disregard of the safety of others. (24 Cal.3d at p. 896.) Between the decisions in *Gombos* and *Taylor*, the law in California had evolved in the area of punitive damages to the point where a finding of defendant's conscious disregard of the safety or rights of others would support an award of punitive damages. (See, e.g., *Silberg v. California Life Ins. Co.* (1974) 11 Cal.3d 452, 462 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Seimon v. Southern Pac. Transportation Co.* (1977) 67 Cal. App.3d 600, 607 [136 Cal.Rptr. 787]; *G. D. Searle & Co. v. Superior Court, supra*, 49 Cal.App.3d 22, 29-32.) Moreover, by the time *Taylor* was decided, the majority rule in other jurisdictions considering the issue was to allow punitive damages in drunk driving cases. (Annot. (1975) 65 A.L.R.3d 656, 661-666, cited in *Busboom, supra*, 113 Cal. App.3d at p. 554; see also Note, *Punitive Damages and the Drunken Driver* (1980) 8 Pepperdine L.Rev. 117, 119, fn. 7.) The trend toward expansion of punitive damages liability foreshadowed *Taylor*, so that when we held that allegations of conscious disregard of the safety of others were sufficient to support punitive damages in the drunk driving situation, the decision was in no way unexpected. (See *Taylor, supra*, 24 Cal.3d at p. 896; *Busboom, supra*, 113 Cal.App.3d at p. 554.)

Defendant's protestation that the principle of fair warning precludes the imposition of punitive damages was recently considered and rejected in *Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757 [174 Cal. Rptr. 348]. In that case the driver was killed and a passenger was severely burned when the automobile in which they were driving suddenly stalled, was rear-ended, and burst into flames. The passenger and heirs sued the manufacturer of the automobile, alleging a design defect in the gasoline tank. The plaintiffs prevailed and were awarded substantial compensatory and punitive damages. On appeal, Ford challenged the award of punitive damages on several grounds. The language of the *Grimshaw* court rejecting those claims is particularly pertinent in response to the defendant's assertions in this case: "Ford's argument that its due process rights were violated because it did not have 'fair warning' that its conduct would render it liable for punitive damages under Civil Code section 3294 ignores the long line of decisions in this state beginning with *Donnelly v. Southern Pacific Co.* (1941) *supra*, 18 Cal.2d 863, 869-870 [118 P.2d 465], holding that punitive damages are recoverable in a nondeliberate or unintentional tort where the defendant's conduct constitutes a conscious disregard of the probability of injury to others. [Citations.] The related contention that application of

Civil Code section 3294 to the instant case would violate the ex post facto prohibition of the federal Constitution because at the time it designed the 1972 Pinto Ford had no warning that its conduct could be punished under Civil Code section 3294 is equally without merit. This constitutional prohibition extends to criminal statutes and penalties, not to civil statutes. (E.g., *In re Bray* (1979) 97 Cal.App.3d 506, 512 [158 Cal.Rptr. 745]; *Ellis* v. *Dept. of Motor Vehicles* (1942) 51 Cal.App.2d 753, 758 [125 P.2d 521].)" (119 Cal.App.3d 757, 811.)

Similarly, because this case involves the imposition of a civil penalty, applying the *Taylor* rule retroactively does not implicate the prohibition of the ex post facto clause. The constitutional safeguards applicable in the criminal area do not apply in a case presenting the possible exposure to civil penalties. (*Wetherbee* v. *United Ins. Co. of America* (1971) 18 Cal.App.3d 266, 272 [95 Cal.Rptr. 678]; *Gibson* v. *Gibson* (1971) 15 Cal.App.3d 943, 949 [93 Cal.Rptr. 617]; *Toole* v. *Richardson-Merrell, Inc.* (1967) 251 Cal.App.2d 689 [60 Cal.Rptr. 398, 29 A.L.R.3d 988].) In *Toole*, for example, the Court of Appeal affirmed a judgment awarding general and punitive damages for injuries suffered by the plaintiff as a result of his use of a drug manufactured by the defendant. The court, noting the civil nature of punitive damages, stated that in such a civil action the procedural guarantees afforded a criminal defendant are inapplicable. (251 Cal.App.2d at pp. 716-717.)

The potential punitive damages award in this case is unquestionably a penalty civil in nature. There is no possibility of the stigma of a criminal conviction nor the potential loss of personal freedom. Thus, although the award of punitive damages is a type of penalty imposed to deter wrongful conduct, "[t]he authorization to award exemplary damages ... does not convert a civil action into a criminal action insofar as it affects constitutional protections in criminal proceedings. [Citations.]" (*People* v. *Superior Court* (*Kaufman*) (1974) 12 Cal.3d 421, 433 [115 Cal.Rptr. 812, 525 P.2d 716].)

California courts have routinely applied overruling decisions retroactively even though such decisions redefined the duty owed, thus the conduct prohibited. (See, e.g., *Archibald* v. *Braverman, supra*, 275 Cal.App.2d 253; *Cummings* v. *Morez, supra*, 42 Cal.App.3d 66.) Although one could draw a distinction between expansion of liability for compensatory damages and increasing punishment by imposition of punitive damages, the effect is the same: exposure to a form of damages for which the defendant was not previously liable. Although it is true

that no California case had specifically allowed punitive damages in a drunk driving case prior to *Taylor*, in this instance, the increased liability is merely a change in the remedy for enforcing defendant's obligation to refrain from drunk driving, not a change in the nature of the obligation itself. Defendant undoubtedly had fair warning that his conduct—driving while intoxicated—was prohibited. Thus, we must reject defendant's assertion that it would be unfair to allow the punitive damages rule of *Taylor* to be retroactively applied in this case.[6]

■ Having rejected defendant's arguments against retroactive application of the *Taylor* rule, we finally consider defendant's assertions that the proposed complaint does not support a claim for punitive damages, and that the doctrine of laches compels denial of the writ. Defendant argues that the allegations claim merely that he consumed alcoholic beverages, then drove on a freeway at speeds over 75 miles per hour, and lost control of the vehicle. Defendant dismisses the allegations that the plaintiff objected to the high speeds because that objection occurred earlier in the day, under different conditions.

The proposed complaint alleges that, after consuming alcohol, the defendant drove with plaintiff in the vehicle at speeds in excess of 100 miles per hour, and that the plaintiff objected to the high speed and demanded that defendant properly control the vehicle. The parties stopped at a restaurant, and defendant consumed additional alcoholic beverages, then returned to the car and defendant drove at a speed well in excess of 75 miles per hour, losing control of the vehicle and injuring plaintiff. The complaint alleges that defendant drove the vehicle with knowledge that probable serious injury to other persons would result and in conscious disregard of the safety of plaintiff.

In *Dawes* v. *Superior Court* (1980) 111 Cal.App.3d 82 [168 Cal. Rptr. 319], the Court of Appeal issued a peremptory writ of mandate commanding the trial court to vacate its order striking allegations of the complaint that the driver, while intoxicated, ran a stop sign, zigzagged in and out of traffic at speeds in excess of 65 miles per hour in a 35-mile-per-hour zone, all with reckless disregard of the probable conse-

---

[6]In view of the one-year period of limitations in Code of Civil Procedure section 340, retrospective application of *Taylor* should for the most part only affect cases in which the accident occurred after August 1978, plus cases already filed and pending when *Taylor* became final, and which are not now final—not a large number of cases. (See *Busboom, supra*, 113 Cal.App.3d at p. 554; cf. *Monroe* v. *Trustees of the California State Colleges* (1971) 6 Cal.3d 399, 406-407 [99 Cal.Rptr. 129, 491 P.2d 1105].)

quences of said conduct and with reckless disregard of the safety of others. The court concluded that the plaintiff had pleaded facts from which the defendant's conscious disregard of the safety of others and probability of injury to others could reasonably be inferred. *Dawes* reasoned that such allegations, since 1974 at the latest, are sufficient to be interpreted as malice under Civil Code section 3294. (*Id.*, at pp. 87-88.)

In accord with that decision, we conclude that the allegations of this proposed complaint do state facts sufficient to support an award of punitive damages. The gravamen of the proposed complaint, as of the complaint in *Taylor*, is that "[d]efendant became intoxicated and thereafter drove a car while in that condition, despite his knowledge of the safety hazard he created thereby." (*Taylor, supra*, 24 Cal.3d at p. 896.)

■ Finally, defendant claims that the doctrine of laches requires denial of the writ because of the delay by petitioners in seeking review of the respondent court's order.

Laches requires an unreasonable delay in filing the petition plus prejudice to real party. (See *Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617]; *Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 904 [69 Cal.Rptr. 612, 442 P.2d 692].) Neither appears to be present in this case.

Defendant asserts that a seven-and-one-half-month delay in seeking review of the respondent court's order bars petitioners' right to a writ. The original complaint was filed April 11, 1980. Respondent court denied petitioners' motions to amend on August 14, 1980, and January 12, 1981. Petitioners sought review in the Court of Appeal on March 1, 1981.

Defendant appears to argue that the unreasonable delay occurred in the time between the denial of the first motion to amend and the filing of the petition in the Court of Appeal. In view of the conflict in the decisions of the Courts of Appeal, the delay was not unreasonable because petitioners legitimately sought relief in the trial court by the second motion to amend based on the authority of the more recently decided *Busboom* case. Once the respondent court denied relief on the second attempt to amend, petitioners filed the instant petition, seeking review of the January 12, 1981, order, in a timely manner. Thus, the delay in filing the petition was not unreasonable.

Defendant claims prejudice because he has prepared his defense assuming that he would only be exposed to compensatory damages, has not retained private counsel, and has already deposed both plaintiffs. None of these consequences can be said to have irretrievably prejudiced defendant.

Therefore, both because there has been no unreasonable delay and because defendant has not been prejudiced, laches does not bar the instant petition.

"Although we rarely grant extraordinary relief at the pleading stage of a lawsuit, mandamus will lie when it appears that the trial court has deprived a party of an opportunity to plead his cause of action or defense, and when extraordinary relief may prevent a needless and expensive trial and reversal." (*Taylor, supra*, 24 Cal.3d at p. 894.) As in *Taylor*, such a combination of circumstances exists in the instant case.

The *Taylor* decision emphasized the deterrent purpose of punitive damages. To the extent that punitive damages inhibit drunk driving, that purpose is served by retroactive application of the *Taylor* rule. Retroactivity will reaffirm this court's recognition of "the severe threat to the public safety which is posed by the intoxicated driver." (*Taylor, supra*, at p. 899.) Retroactivity will create a greater, more immediate deterrent impact on the consciousness of the driving public than would prospective application. Retroactivity will not create an undue burden on insurance companies, nor will it unfairly penalize drunk drivers who caused injury to others before *Taylor*.

To the extent that *Mau* v. *Superior Court, supra*, 101 Cal.App.3d 875, is inconsistent with the views herein expressed, it is disapproved.

Let a peremptory writ of mandate issue directing the trial court to grant leave to amend the complaint.

Bird, C. J., Mosk, J., Newman, J., and Kaus, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. In *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890 [157 Cal.Rptr. 693, 598 P.2d 854], we abandoned an earlier rule (see *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 527 [322 P.2d 933]) which previously had shielded the intoxicated driver from the imposition of punitive damages. We were influenced in large part by the need to deter *future* misconduct of this kind, in light

of the overwhelming statistical evidence of the serious threat to public safety posed by the intoxicated driver. (*Taylor*, at pp. 897-899.) I continue to believe firmly in the principles expressed in *Taylor*. Nothing we said there, however, suggested that its new rule should be retroactively (and punitively) imposed upon persons whose misconduct occurred before our decision was announced.

As was recently stated by the Court of Appeal in *Mau v. Superior Court* (1980) 101 Cal.App.3d 875, 881-882 [161 Cal.Rptr. 895]: "Punitive damages are disfavored. The award of punitive damages as permitted by the *Taylor* decision is recognized in *Taylor* as a form of punishment admittedly imposed in an effort to deter persons from driving automobiles after drinking . . . . This creates then not merely a change in the rule of damages recoverable by a plaintiff but imposes a penalty or punishment on the defendant. Under the idea of fair warning, a law increasing punishment or penalty for prohibited conduct has been universally applied prospectively only. The only justification for punitive damages or punishment is its hoped for deterrent effect on others. Such punishment cannot be justified on any notion of retribution or revenge. Regardless of the merits of the debate of whether the threat of punishment in fact deters antisocial conduct, it clearly cannot have that effect unless the threat exists prior to the commission of the antisocial act."

The majority, by adopting a rule of retroactive application for *Taylor*, in my view, carries the deterrence concept to an unfair, indeed punitive, extreme. By retroactively enacting a penal award from persons who, at the time of the tort, could have neither anticipated *nor insured against* such liability, the majority imposes an horrendous financial burden upon them. I do not see how the imposition of punitive damages can, pursuant to our *Taylor* rationale, reasonably be said to deter conduct which had already occurred when *Taylor* was announced.

I would deny the peremptory writ.