**STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff,**

v.

**Robert Sanders BAER, et al., Defendants.**

**No. C 89–3775 FMS.**

United States District Court, N.D. California.

Sept. 11, 1990.

Lawrence M. Guslani, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Redwood City, Cal., for plaintiff.

Steven R. Manchester, Manchester & Williams, San Jose, Cal., for Robert Sanders Baer.

E. Gerard Mannion, Wesley M. Lowe, Sangster, Mannion & Curfman, San Francisco, Cal., for Arthur Eric Dahlstrom.

O'Reilly & Collins, Menlo Park, Cal., Susan B. Jordan, San Francisco, Cal., for Hilda Ives.

## ORDER GRANTING SUMMARY JUDGMENT

FERN M. SMITH, District Judge.

This is an action for declaratory relief as to defendant's right to insurance coverage for a wrongful death action currently pending in state court. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. The matter came before the Court for hearing on the plaintiff's motion for summary judgment on August 15, 1990. For the reasons stated at the hearing and for the reasons set forth below, the Court grants summary judgment in favor of the plaintiff.

## FACTS

Defendant Robert Sanders Baer is a 42–year old real estate developer residing in Palo Alto. He and Dareen Dahlstrom were close personal friends for over twenty years. Prior to 1988, Dahlstrom was living in Los Angeles with her husband. In July of 1988, she came to Palo Alto to visit Baer. Her father had recently passed away, and Dahlstrom was in the process of separating from her husband. She planned to spend a weekend with Baer and then live in his house for two months while he traveled in Africa.

Baer had, on several occasions, used a recreational drug known as "Ecstasy." [1] He believed that its use had certain psychological and emotional benefits. Prior to Dahlstrom's July, 1988 visit, Baer told her about his experiences using the drug, and the two discussed the possibility of Dahlstrom trying it during her visit. They discussed the effects of the drug and the ways in which it might help Dahlstrom cope with the changes in her life. On July 22, 1989, she informed Baer that she wanted to use the drug.

The next day, at his home, Baer and Dahlstrom went through various rituals in preparation for her use of the drug, concluding with the following brief prayer: "May this bring harm to no one and blessing to all." Baer then took approximately 200 to 300 milligrams of the drug from his personal supply and dissolved it in a glass of water. He believed this amount to be appropriate for Dahlstrom because it was slightly less than half of the does he usually gave himself. Dahlstrom drank the mixture immediately thereafter.

Approximately twenty minutes later, she began exhibiting certain effects of the drug, including writhing on the floor. After thirty minutes, Dahlstrom calmed down

1. The technical name for this drug is methylene-dioxymethamphetamine, abbreviated as MDMA.

and appeared very relaxed. Baer noted that she seemed comfortable and left the room for several minutes. When he returned, Dahlstrom was unconscious and not breathing. He telephoned 911 after he was unable to revive her. Dahlstrom was transported to Stanford University Hospital, where she was pronounced dead.

On February 13, 1990, Dahlstrom's survivors filed a wrongful death action against Baer in the Superior Court for the County of Santa Clara. The issue before this Court is whether Baer is entitled to receive coverage for that lawsuit under a homeowners insurance policy issued to him by State Farm Fire and Casualty Company.

## ANALYSIS

State Farm has moved for summary judgment on three grounds: (1) the administration of the drug to Dahlstrom was not an accident; therefore, the event was not an "occurrence" as defined by the policy; (2) public policy considerations preclude coverage for persons who provide illegal drugs to others in their home; and (3) coverage is precluded by an exclusion in the policy for injury that is either expected or intended by the insured or that is caused by the insured's willful and malicious acts. In opposition, the defendants argue that, (1) although Baer intended to give Dahlstrom the drug, he did not intend any injury; (2) because her death was an accident, the event constituted an "occurrence" under the policy; and (3) summary judgment is inappropriate because there are material issues of fact as to Baer's negligence in choosing the dosage he gave to Dahlstrom and in failing to summon medical assistance promptly.

After full consideration of the parties' submissions and oral argument, the Court holds that insurance coverage for the act of providing an illegal drug to another in the insured's home is precluded as against public policy and by the provisions of Califor-

nia Civil Code § 1668. The Court finds it unnecessary, therefore, to interpret the terms of the policy or to resolve factual issues as to Baer's "negligence." This holding is based upon the findings set forth below.

### 1. *Ecstasy is a Controlled Substance.*

There is no dispute that the drug "Ecstasy" was a Schedule I controlled substance under federal law on July 23, 1988.[2] The Controlled Substance Act, 21 U.S.C. § 841(a), makes it illegal to manufacture, distribute, dispense, or possess with intent to manufacture, distribute or dispense, any controlled substance. Schedule I contains the most dangerous of illegal drugs. Prior to placing a substance on Schedule I, the government must make the following findings: (1) the drug has a high potential for abuse; (2) the drug has no currently accepted medical use in treatment in the United States; and (3) there is a lack of accepted safety for use of the drug under medical supervision. 21 U.S.C. § 812(b). While Baer may have believed that "Ecstasy" was safe and beneficial, in fact he dispensed a dangerous, hallucinogenic, federally-controlled street drug. Under the Controlled Substances Act, it was patently illegal for him to do so. 21 U.S.C. § 841(a).

### 2. *California Law Precludes Coverage for Illegal Acts.*

California Civil Code section 1668 provides as follows:

All contracts which may have as their object, directly or indirectly, to exempt anyone from the responsibility for his own fraud, or willful injury to the person or property of another, *or violation of law,* whether willful or negligent, are against the policy of the law.

(Emphasis added.) This section, along with California Insurance Code section 533, which prohibits coverage for the willful

---

**2.** For several years after its "discovery," "Ecstasy" was not an illegal drug. Some mental health professionals administered it to their patients in "therapeutic doses." It was also available for purchase, in some manner, by nonprofessionals seeking to experiment with its mind-

altering effects. Indeed, the quantity of the drug given to Dahlstrom was purchased by Baer before the drug was made illegal. The statute placing "Ecstasy" on Schedule 1 of the Controlled Substances Act was effective March 23, 1988. 21 C.F.R. 1308.

acts of the insured, embodies the state's intent to prohibit insurance coverage for willful torts or illegal acts. *See, State Farm v. Huie,* 666 F.Supp. 1402, 1405 (N.D.Cal.1987), *affirmed,* 849 F.2d 1218. These sections are read into every insurance contract in the state and function as the equivalent to an exclusionary clause in the policy itself. *Id.*

The California Supreme Court has interpreted Insurance Code section 533 as precluding coverage only as to those willful acts that are done *with an intent to harm* or a "preconceived design to inflict injury." *See Clemmer v. Hartford Insurance Co.,* 22 Cal.3d 865, 887, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978); *Peterson v. Superior Court,* 31 Cal.3d 147, 181 Cal.Rptr. 784, 642 P.2d 1305 (1982). The law is not clear as to whether the application of Civil Code section 1668 is similarly limited. There are, for instance, certain illegal acts for which coverage is provided in the event of accidental injury. An obvious example would be driving over the speed limit. Some courts have also have held that coverage is not necessarily precluded by the criminal nature of the insured's actions. In *Allstate Ins. Co. v. Overton,* 160 Cal. App.3d 843, 206 Cal.Rptr. 823 (1984), the insured struck another person in the face and was subsequently sued for personal injuries. Although the insured was convicted of misdemeanor battery as a result of the incident, the court held that coverage for the personal injury action might still apply, because the conviction alone did not prove the insured's state of mind. Similarly, in *Clemmer v. Hartford Insurance Co.,* 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978), the court held that coverage under a comprehensive personal liability policy was not necessarily precluded by the insured's conviction for second degree murder because it was not clear that he had the mental capacity to form an intent to injure. In both of these cases, the primary issue was the insured's state of mind, or lack thereof; neither court addressed the effect of Civil Code section 1668.

Although there are certain cases in which an insured may be entitled to coverage for an act that proved to be unlawful,

these cases generally involve situations in which the violation of law, the injury, and sometimes the act itself, were unintended by the insured. This is not such a case. Baer knew or should have known that "Ecstasy" was a federally controlled substance and that it was illegal to dispense the drug to others. Nevertheless, he willfully prepared and administered the drug to Dahlstrom. As the court explained in *State Farm Fire & Cas. Co. v. Huie,* 666 F.Supp. at 1405:

> That [principal] point is the California legislature's intent not to insure certain acts, regardless of the definition of the liabilities that might arise from them. The focus should be on the *act*—which is what the legislature is trying to prevent—rather than on the *theories* of civil or criminal liability that might arise from that act. Regardless of the language of individual criminal statutes, or the language used by the California courts in the individual cases before them, the legislative intent is clear. That is, that some acts are so extreme that public policy does not permit them to be insured.

(Emphasis in original.) The Court holds that the provision of a Schedule I controlled substance to others in the insured's home is an act "so extreme" that it cannot be insured under California law, pursuant to Civil Code § 1668.

### 3. *The Provision of Illegal Drugs is Inherently Harmful.*

As an additional and alternative basis for this holding, the Court finds that the administration or provision of Schedule I controlled substances by an unlicensed individual is in that category of activities that carries with it an inherent danger of injury. Recently, in relation to cases of sexual assault and child molestation, courts have held that there are certain acts from which an intent to harm may be inferred. *See, e.g., Allstate Ins. Co. v. Kim W.,* 160 Cal. App.3d 326, 333, 206 Cal.Rptr. 609 (1984); *State Farm Fire & Cas. Co. v. Bomke,* 849 F.2d 1218, 1219 (9th Cir.1988); *Allstate Ins. Co. v. Gilbert,* 852 F.2d 449, 452 (9th

Cir.1988); *State Farm Fire & Cas. Co. v. Abraio,* 874 F.2d 619, 623 (9th Cir.1989). Because of the significant physiological and neurological effects of controlled substances, and the danger inherent in their unsupervised use, the Court finds that the furnishing of Schedule I drugs is also in this category. Public policy precludes the provision of insurance coverage for those who choose to engage in inherently harmful activities of this nature.

## CONCLUSION

For the reasons stated above, summary judgment is granted is granted in favor of the plaintiff. Judgment shall be entered accordingly,

SO ORDERED.